## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **M.J., A MINOR, BY AND** | ) | CASE NO.: |
| **THROUGH HIS GUARDIAN, S.J.** | ) | |
| c/o Edward L. Gilbert | ) | JUDGE: |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **S.J.** | ) | |
| c/o Edward L. Gilbert | ) | |
| Edward L. Gilbert Co., LPA | ) | **COMPLAINT** |
| One Cascade Plaza, Suite 825 | ) | **(Jury Demand Endorsed Herein)** |
| Akron, Ohio 44308 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AKRON CITY SCHOOL DISTRICT** | ) | |
| **BOARD OF EDUCATION** | ) | |
| c/o Patrick Bravo, Board President | ) | |
| 70 North Broadway Street | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **AKRON CITY SCHOOL DISTRICT** | ) | |
| c/o Patrick Bravo, Board President | ) | |
| 70 North Broadway Street | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DAVID W. JAMES** | ) | |
| Superintendent of Akron City School | ) | |
| District (Official Capacity Only) | ) | |
| 70 North Broadway Street | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |

and                                               )
                                                  )
**PHILOMENA VINCENTE**                            )
(Official Capacity and Individual                 )
Capacity)                                         )
Leggett Community Learning Center                 )
333 East Thornton Street                          )
Akron, Ohio 44311                                 )
                                                  )
and                                               )
                                                  )
**JENNIFER RAMON**                                )
(Official Capacity and Individual                 )
Capacity)                                         )
Leggett Community Learning Center                 )
333 East Thornton Street                          )
Akron, Ohio 44311                                 )
                                                  )
and                                               )
                                                  )
**CHRISTOPHER HENDON**                            )
(Official Capacity and Individual                 )
Capacity)                                         )
739 Nome Avenue                                   )
Akron, Ohio 44320                                 )
                                                  )
and                                               )
                                                  )
**JOHN/JANE DOE TEACHER**                         )
(Official Capacity and Individual                 )
Capacity)                                         )
Leggett Community Learning Center                 )
333 East Thornton Street                          )
Akron, Ohio 44311                                 )
                                                  )
and                                               )
                                                  )
**JOHN/JANE DOE EMPLOYEE**                        )
(Official Capacity and Individual                 )
Capacity)                                         )
Leggett Community Learning Center                 )
333 East Thornton Street                          )
Akron, Ohio 44311                                 )
                                                  )
            Defendants.

2

## PRELIMINARY STATEMENT

1. Plaintiffs in this civil rights action are an African-American child ("M.J.") with a behavioral and learning disability attending school in the Akron City School District and his mother ("S.J.").

2. The Akron City School District ("District") and its employees unlawfully, injuriously, and punitively permitted the abuse of M.J., and created a harassing, intimidating, and discriminatory environment for M.J while he was a student at Leggett Community Learning Center ("Leggett CLC").

3. The Akron City School District Board of Education ("Board") failed to supervise, train, monitor, and/or maintain protective measures against violent and abusive individuals on Leggett CLC school grounds, an elementary school within the Akron City School District.

4. The Board's failure to protect M.J. on Leggett CLC school grounds led to the abuse of M.J. by a stranger impersonating a police officer who had a limited affiliation with Leggett CLC or the Akron City School District.

5. Failure on the part of Akron City School District Superintendent, David W. James ("James") to supervise and monitor Leggett CLC operations gave the abusive individual the opportunity to enter Leggett CLC and abuse M.J.

6. Defendant, Christopher Hendon ("Hendon"), is an individual who was sentenced in Summit County Court of Common Pleas on or about March 7, 2018 for engaging in illegal activity including impersonating a police officer, kidnapping, and abduction.

7. M.J., who is also a minor, was subjected to physical and/or emotional abuse by Hendon, with such abuse either deliberately ignored or condoned by Co-Defendants. The actions

of the Defendants were primarily earmarked for the poor marginalized African-American children.

8. The violence and abuse had no relationship whatsoever to any legitimate educational or other objective but rather was nothing more than intentional painfully injurious conduct toward M.J. and his misled guardian. Hendon's conduct toward M.J., and the Defendants' acquiescence and cover-up, were inexcusable.

9. Defendants' unlawful conduct identified in this Complaint was not in furtherance of efforts to control or discipline students or maintain order or control in the classroom. Instead, the injuries to M.J. were caused by the Defendants' conscious and flagrant indifference to Plaintiffs' rights.

10. Plaintiffs bring this action to seek and obtain monetary compensatory and punitive damages, as well as injunctive relief, for the intentional violations of their rights under the United States Constitution, federal law and state law.

## JURISDICTION AND VENUE

11. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

12. Jurisdiction is invoked pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C.§ 1331, §1343 and §1367 as one or more of the claims arise "under the Constitution, laws, or treaties of the United States."

13. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

14. Venue is conferred under 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

15. All jurisdictional requirements have been met. Plaintiffs are not required to exhaust administrative remedies because the causes of action are discrimination-based. See *Fry v. Napoleon Community Schools*,137 S.Ct. 743, 197 L.Ed.2d 46, 2017 WL 685533 (S.Ct. 2017).

## PARTIES

16. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

17. M.J. is an African-American U.S. minor citizen residing in Akron, Summit County, Ohio and at all relevant times, has been a student attending Leggett CLC.

18. S.J. is an African-American U.S. citizen residing in Akron, Summit County, Ohio.

19. M.J. and S.J.'s identities and address are withheld due to the confidential nature of this proceeding and fear of retaliation from persons in the community that are close to several Co-Defendants.

20. Defendant, the Akron City School District Board of Education ("Board"), through its President, is the governing body of the Akron City School District and a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 70 North Broadway Street, Akron, Ohio 44308. The Board is an entity operating under the laws of the State of Ohio and is authorized to sue and be sued as an entity for its acts and those of its agents and employees.

21. Defendant, the Akron City School District ("District"), through its President, is a political subdivision organized under the laws of the State of Ohio with its principal place of

business located at 70 North Broadway Street, Akron, Ohio 44308. At all relevant times herein, the District had authority over how M.J. was treated while he attended Leggett CLC.

22. The District and Board have their primary place of business in Summit County, Ohio.

23. Upon information and belief, during all relevant periods of time herein, David W. James ("James") was the superintendent of the District and, in such capacity, was responsible for the training and supervision of the staff at Leggett CLC, including Philomena Vincente and Jennifer Ramon, the principal and teacher of M.J. Along with the John and Jane Does, James is being sued in his official capacity. Upon information and belief, Defendant James was a final policymaker for the District with regard to directing and controlling Vincente and Ramon's conduct and reporting abuse to authorities.

24. Upon information and belief, during all relevant periods of time herein, Defendant, Philomena Vincente ("Vincente"), is a U.S. citizen and at all relevant times the Principal at Leggett CLC charged with the responsibility of assuring that students are properly cared for, teachers properly perform their duties, and policies, procedures, and programs that protect students from abuse while they attend said school are properly implemented. Vincente is sued in her individual and official capacity.

25. Upon information and belief, during all relevant periods of time herein, Defendant, Jennifer Ramon ("Ramon"), is a U.S. citizen and at all relevant times was the homeroom teacher of M.J., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in her class.  Ramon is sued in her individual and official capacity.

26. Upon information and belief, Defendant, Christopher Hendon ("Hendon"), is a U.S. citizen and at all relevant times impersonated a police officer and was granted permission to enter Leggett CLC to promote his "scared straight" program that included the abuse of minor students on and off Leggett CLC property.

27. Defendant, John/Jane Doe Teacher, at all relevant times worked for the District and the Board at Leggett CLC and was charged with the responsibility of assuring that students are properly supervised and protected from abuse while in his/her class.  John/Jane Doe Teacher is sued in his or her individual and official capacity.

28. Defendant, John/Jane Doe Employee at all relevant times worked for the District and the Board at Leggett CLC and allowed Hendon access to the school building.  John/Jane Doe Employee is sued in his or her individual and official capacity.

## STATEMENT OF FACTS

29. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

30. M.J. is an African-American minor child.

31. S.J. is the African-American mother and guardian of M.J.

32. M.J., at all relevant times, was a student at Leggett CLC in the Akron School District.

33. M.J. was diagnosed with having behavior disorders that impeded his learning.

34. M.J. has an Individualized Education Program ("IEP"). An IEP is a written statement of the educational program designed to meet a child's individual needs. Every child who receives special education services must have an IEP.

35. M.J. has received special education services for several years in the Akron City School District.

36. Bravo was sworn in as Board of Education President of Leggett CLC, and all other public schools in the Akron City School District, on January 9, 2017.

37. On or about April 4, 2017, M.J. was sent to the main administrative office at Leggett CLC to be disciplined.

38. On arrival at the administrative office, M.J. met Hendon, John/Jane Doe Employee, and his Teacher.

39. All parties were aware of Hendon's presence.

40. Hendon conducted a "scared straight" mentor program at Leggett CLC with Defendants' knowledge and permission.

41. Hendon was never an administrator or employee at Leggett CLC.

42. Hendon was wearing, and often wore on Leggett CLC property, an all black police uniform with a badge that was partly covered with black tape.

43. Hendon openly carried a gun and held himself out as an officer of the peace/resource officer.

44. Hendon was given the phone number of M.J.'s mother. Hendon subsequently called S.J. and introduced himself and talked about the mentor program that he conducted at Leggett CLC with the support of Co-Defendants. All parties were present when Hendon made the call to S.J.

45. Hendon informed S.J. on the call that the "sacred straight" program he conducted included transporting children from the school to the local prison, handcuffing them, and placing them in prison cells.  Thinking that a police officer with such a program could help mentor M.J., S.J. agreed to discuss the program further.

46. Hendon had no credentials or training as a law enforcement or school resource officer, and Defendants knew or should have known that Hendon had lacked the proper credentials and training to be a law enforcement officer. However, Defendants held Hendon out to the community as having proper credentials.

47. On or about April 8, 2017, all Defendants falsely represented Hendon to S.J. As a result of Defendants' misrepresentation, Hendon met with Plaintiffs at the local Young Men's Christian Association ("YMCA").

48. During the April 8, 2017 meeting, Hendon presented M.J.'s school progress report to S.J.

49. The progress report is created and maintained by teachers and administrators of Akron City School District and Leggett CLC and it includes M.J.'s grades and profile. This progress report is confidential.

50. S.J. did not give permission to any employee of Akron City School District or Leggett CLC to allow Hendon to view or handle the progress report. S.J. does not know how Hendon was able to access the document.

51. On or about April 11, 2017, Vincente called S.J. to inform her that M.J. was being disruptive. Vincente told S.J. that Hendon was in the building and that she would get Hendon to "have a stern talking to M.J."  Vincente did not ask for S.J.'s permission to have M.J. interact with Hendon.

52. M.J. was in Ramon's classroom when Hendon arrived.  Ramon allowed Hendon to take M.J. out of the classroom without any supervision.

53. Once Hendon took M.J. out of Ramon's classroom, Hendon at the permission of Vincente, took M.J. to a "private room."  M.J. and Hendon were the only people in the room, and they stayed in the room for approximately five (5) minutes.

54. S.J. received a phone call from Vincente after Hendon and M.J. left the "private room" telling her that Hendon and M.J. interacted.

55. On April 11, 2017, while in the school's "private room," Hendon grabbed M.J. by the shirt and threw him against a brick wall, pushed him, and pinned him against the wall.

56. Hendon used profanity in front of M.J. and called him "the b-word." Hendon further said to M.J., "Nigga throw me around like you threw the desk."  M.J.'s appearance clearly showed that he had been manhandled by Hendon.  However, Defendants did not report this abuse.

57. After removing M.J. from the "private room" Hendon took M.J. back to the classroom. Upon their arrival, Ramon complained about two other students not listening to her.

58. Thereafter, Hendon took M.J. and the other two students behind the stage in the lunch room cafeteria and forcibly made them do pushups, jumping jacks, and other physical exercises.

59. Most White students were not similarly treated.

60. Hendon contacted S.J. shortly after the Vincente phone call to tell her that M.J. was fine.

61. S.J. was unaware of the physical abuse until Hendon was later criminally charged.  When the news regarding Hendon went public S.J. contacted Vincente to speak with her about the situation.  However, even after she found out about Hendon's misrepresentation, Vincente still did not report Hendon's abuse of M.J.

62. On or about April 12, 2107, M.J. and another classmate of his were backflipping on the playground during recess. John or Jane Doe Teacher had a special education class going on at that time. John or Jane Doe Teacher went into the school building and got Hendon.

Hendon then took M.J. and his classmate behind the stage again and forcibly made them do an intense workout for a long time.

63. Most White students were not similarly treated.

64. M.J. was diagnosed with exercise-induced asthma.

65. M.J., under no circumstances, should have been subjected to strenuous exercises, which Hendon made him do, without his inhaler or breathing treatment.

66. Hendon had no experience or qualifications as a physical instructor teacher, nor any authority to force M.J. and other students do such exercises.

67. On other occasions, Hendon put handcuffs on M.J. in addition to handcuffing other children while they were on school property.  Teachers and other employees were present when this behavior took place including Vincente, Ramon, Defendant John or Jane Doe Employee, and/or John or Jane Doe Teacher.

68. On April 24, 2017, Hendon was arrested for impersonating a law enforcement officer/ resource officer for the Akron City School District.

69. M.J. was quiet, embarrassed, and hurt, and did not speak to S.J. about what happened on April 11 and 12, 2017 regarding Hendon until Hendon's arrest for impersonating a police officer was broadcast on the news.

70. Hendon was indicted on 61 felony counts and later pled guilty to seven counts of kidnapping, six counts of abduction, fifteen counts of impersonating a police officer and three counts of illegal conveyance of a weapon into school.

71. M.J. subsequently transferred to Betty Jane CLC and is no longer a student at Leggett CLC.

72. Ever since the incident involving Hendon, S.J. has observed M.J. struggle more with his behavior and learning. Incidents of throwing chairs and tables have increased in frequency.

73. M.J.'s behavioral struggles have increased to the extent that on confronting M.J. on his behavior and threats of suicide, M.J. replies, "Are you calling the real police?"

74. On or about December 6, 2017, Betty Jane CLC advised that M.J. could not return to school without another evaluation. This caused S.J. to abruptly end services with Minority Behavioral Health and seek a therapist for M.J.'s psychiatric needs.

75. Despite securing a therapist who M.J. now sees once a month, M.J.'s school schedule had to be limited to half-days. The intense schedule changes demanded S.J. to reduce her professional availability thereby reducing her work week from 80 hours to 60 hours. This resulted in financial hardship to the family.

76. Since the incident, M.J. continues to receive increased reprimands for his behavior in the form of suspensions and out of school agreements thereby causing increased difficulty to S.J. in keeping her son in school.

77.  Owing to increased behavior problems of M.J., Betty Jane CLC might release him and require him to be transferred to an alternative school with a disruptive environment. This, in the opinion of Lisa Johnson, the behavioral specialist working with M.J., will not be conducive to learning and addressing M.J.'s current behavioral problems.

78. On or about March 7, 2018, Hendon was sentenced to 5 years, 11 months years in prison.

**FIRST CAUSE OF ACTION**
**Denial of 14th Amendment Right (Substantive Due Process)**

79. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

12

80. Plaintiffs bring this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

81. Plaintiff brings this claim against all Defendants.

82. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

83. Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of Defendants' misconduct.

84. By their actions, as described herein, Defendants, as a part of a custom, policy and/or practice, subjected M.J. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law. In particular, as a student in a public school, Plaintiff has a liberty interest in personal security and freedom from restraint and infliction of pain through a course of conduct that shocks the conscience.

85. Under Ohio Rev. Code Ann. § 3313.64, the State of Ohio confers a right upon M.J. to receive a free public education.

86. Such a right is a property and/or liberty interest, within the meaning of the Fourteenth Amendment of the United States Constitution.

87. Under Ohio Rev. Code Ann. § 3313.666, the State of Ohio further entitles M.J. to receive that education in a school environment that is free of harassment, intimidation, or bullying on school property.  Moreover, Defendants are required to create and maintain procedures that prohibit harassment, intimidation, or bullying, and require school personnel to report prohibited incidents.

88. Accordingly, Plaintiffs have a property and/or liberty interest[1] in such a school environment that is included within the substantive component of the Fourteenth Amendment's Due Process Clause to the U.S. Constitution.

89. Plaintiffs state that Defendants used their authority as Leggett CLC employees and administrators to arbitrarily deprive M.J. of this interest and his interest in bodily integrity.[2]

90. Defendant Vincente is the Principal at Leggett CLC and is responsible for supervising and overseeing the policies, procedures, and operations of Leggett CLC, as well as creating and implementing the school's policies.

91. Defendants had a duty to implement and follow policies, practices, and procedures which respected and preserved Plaintiffs' constitutional rights. Defendants failed to implement such policies and/or the policies implemented by Defendants were constitutionally inadequate.

92. Plaintiffs state that Defendant Vincente, through her affirmative actions, ignored policies and procedures and/or implemented policies and procedures that infringed on Plaintiffs' constitutional rights, and directly and intentionally placed M.J. in a position where there would be a risk to his health and safety.

---

[1] Protected interests in property "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[2] "A governmental actor may, however, violate the due process clause by allowing a third party to harm a person in government custody…or by creating a particular danger to the victim. This latter theory of liability… has been recognized in this Circuit as a viable species of substantive due process claim." *Kallstrom v. City of Columbus,*136 F.3d 1055, 1065-67 (6th Cir.1998).

93. In other words, Defendant Vincente's deliberate indifference endangered M.J., and created a risk of harm by permitting Hendon, a private person with no law enforcement or administrative background, to harass, intimidate, and bully M.J. in an unsupervised environment on Leggett CLC property.  Defendant Vincente knew of and disregarded the risk Hendon posed to M.J.'s safety, thus creating the danger.

94. Plaintiffs state that Defendant Ramon, through her affirmative actions and deliberate indifference, ignored policies and procedures and/or implemented policies and procedures, and endangered M.J.  By allowing Hendon, a private person, to take M.J. out of the classroom without any supervision, Defendant Ramon endangered M.J.'s health and safety. Defendant Ramon knew of and disregarded the risk Hendon posed to M.J.'s safety, thus creating the danger.

95. Plaintiffs further state that Defendants violated a fundamental right granted to S.J.

96. The District, the Board, James, Vincente, and Ramon knowingly permitted, authorized, and sanctioned harm to M.J.

97. Defendants' actions and/or omissions, as described herein, were taken in accordance with the District and Board's custom and/or policy, or were ratified by the District and Board, such that the District and Board adopted such practices, customs, or policies.

98. Defendants knew or reasonably should have known about the abusive practices with respect to M.J. The abusive and unconstitutional practices Defendants regularly undertook are so well settled as to constitute a custom or usage in the District. Yet, Defendants failed to take any affirmative actions to provide for the safety and well-being of African-American children with disabilities in Defendants' care, including M.J.

99. Defendants' actions, as described above, were objectively unreasonable, willful and wanton, and shocking to the conscience in light of the facts and circumstances surrounding the assault inflicted on M.J., an African-American child with disabilities, and entrusted to Defendants' care.

100. The conduct of the individual Defendants described herein violated clearly established rights of Plaintiffs of which reasonable people in the Defendants' position knew or should have known.

101. Defendants knew or should have known that the State of Ohio Department of Education policies and state law forbade the use of unreasonable and unnecessary force. Defendants nonetheless continued these customs, policies, and/or practices.

102. Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

103. M.J., like all United States citizens, has the substantive due process constitutional right to personal security and bodily integrity.

104. M.J. also has the substantive due process constitutional right to be free from arbitrary government conduct that lacks all socially redeeming value.

105. The relationship between M.J. and the Defendants was not voluntary. M.J. was required by law to attend the District's schools, in general, and Ramon's class, in particular.

106. The force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

107.     Defendants deprived M.J. of his constitutional right to substantive due process by engaging in arbitrary actions and omissions towards him that was of such an extreme nature as to shock the conscience. Vincente, Ramon, and Hendon acted unlawfully and James acquiesced as a supervisor and final policymakers for the District.

108.     Defendants' conduct amounted to a tacit authorization of the abuse.

109.     Defendants acted under color of law to deprive Plaintiffs of their protected property interests under the Due Process Clause.

110.     None of the Defendants were pursuing any legitimate governmental purpose by allowing Hendon to verbally and physically intimidating, harassing, and abusing M.J.

111.     As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages, including injuries to M.J.'s person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages.

112.     The Supreme Court has recognized a "fundamental right of parents to make decisions concerning the care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, (2000).

113.     Hendon was not employed by Leggett CLC or the Akron City School District, nor does he have administrative or law enforcement training.

114.     Defendants usurped S.J.'s fundamental right to make decisions concerning the care, custody, and control of M.J. by allowing Hendon to discipline M.J. without informed consent, and allowing Hendon to take control over M.J. without informed consent.

115.     Defendants violated S.J.'s recognized fundamental right by refusing to ask for her input or following school disciplinary procedure.

116.     **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, M.J.'s substantive due process rights, and S.J.'s fundamental right to make decisions concerning control over M.J. Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant James in his official capacity, and against Defendants Vincente and Ramon in their official and individual capacity.

## SECOND CAUSE OF ACTION
### Denial of Plaintiffs' 14th Amendment Right (Equal Protection of the Law)

117.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

118.     M.J. and his guardian, like all United States citizens, have the right to equal protection of the laws.

119.     Without any lawful basis, Defendants treated M.J. differently than they treated typically developing children and parents and guardians of typically developing children.

120.     With regard to how Defendants abusively and with deliberate indifference treated M.J. as described in this Complaint, and how they refused to provide notice of that abusive treatment to M.J.'s guardian, Defendants had no lawful basis whatsoever.

121.     By their actions, as described herein, Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected M.J. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

122.     Defendants discriminated against M.J., in whole or in part, because of his status as an African-American child with a disability, denying him equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

123.     M.J. was assaulted based, in whole or in part, due to his race, African-American.

124.     M.J. was assaulted based, in whole or in part, on his disabilities or manifestations of his disabilities.

125.     Students without disabilities were not subjected to the abuses M.J. was subjected to, as described herein. This difference in treatment was due, in whole or part, to M.J.'s status as a student with disabilities.

126.     Non-minority students were not subjected to the abuses M.J. was subjected to, as described herein. This difference in treatment was due, in whole or part, to M.J.'s race, African-American.

127.     Non-disabled or non-minority students were not subjected to Hendon's maltreatment. This abusive and illegal treatment was reserved solely for children with disabilities and/or minorities.

128.     Defendants' decision to treat disabled students, including M.J., worse than the rest of the student population is unconstitutional.

129.     Defendants' decision to treat minority students, including M.J., worse than the rest of the student population is unconstitutional.

130.    Defendants' actions or omissions shock the conscience and cannot be justified as relating to any rational basis.

131.    The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law.

132.    Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating disabled students and their families differently than typically developing children and their families.

133.    Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating minority students and their families differently than non-minority children and their families.

134.    Defendants' intentional disparate treatment of Plaintiffs violated their right to equal protection of the laws.

135.    The actions of Defendants, as described herein, intentionally deprived Plaintiffs of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused other damages in amounts to be ascertained at trial.

136.    **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, M.J.'s substantive due process rights, and S.J.'s fundamental right to make decisions concerning control over M.J. Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this

20

Honorable Court deems just and proper against Defendants Board and District, Defendant James in his official capacity, and against Defendants Vincente and Ramon in their official and individual capacity.

### THIRD CAUSE OF ACTION
### Supervisory Liability - Failure to Train and Supervise (42 U.S.C. § 1983)

137.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

138.    The Supervisory Defendants (the Board, Vincente and James) each have duties to train and supervise teachers and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision.

139.    Each of the Supervisory Defendants failed to discharge these duties.

140.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

141.    As a result, M.J. was harmed when Defendants allowed Hendon to verbally and physically assault M.J.

142.    The assault has caused M.J. significant trauma.

143.    Had the Supervisory Defendants made any effort to properly train and supervise Ramon, M.J. would not likely have suffered this egregious and conscience-shocking abuse by Hendon, nor would M.J. have likely sustained the damages that he has sustained and will sustain in the future.

144.    The Supervisory Defendants' failure to properly train and supervise their subordinate employee was the moving force and proximate cause of the violation of M.J.'s constitutional rights as described herein.

145.     The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

146.     The acts and/or omissions of the Supervisory Defendants caused M.J.'s damages in that he suffered extreme physical and mental pain and the lasting damage that he will endure in the future.

147.     The actions of the Supervisory Defendants, as described herein, deprived M.J. of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other lasting damages.

148.     **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, M.J.'s substantive due process rights, and S.J.'s fundamental right to make decisions concerning control over M.J. Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant James in his official capacity, and against Defendants Vincente and Ramon in their official capacity and individual capacity.

### FOURTH CAUSE OF ACTION
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. §§ 794 et seq.)**

149.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

150.        Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794

("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104, prohibit

discrimination against persons with disabilities. M.J. has learning and behavioral

disabilities as alleged previously and is a protected person under Section 504.

151.        Section 504 prohibits the exclusion from the participation in, or being denied the

benefits of, or being subjected to discrimination under, any program or activity receiving

federal financial assistance. Congressional authority to condition federal funding under

this Act is derived from the enumerated powers contained in Article 1, Section 8 of the

U.S. Constitution.

152.        The Akron City School District is a recipient of federal financial assistance.

153.        The practices described above, including but not limited to, permitting Hendon to

assault M.J., were discriminatory and denied M.J. the benefits of participation in a public

school education.

154.        Students without disabilities were not subjected to the abuses M.J. was subjected

to, as described herein. This difference in treatment was due, in whole or part, to M.J.'s

status as a student with disabilities. Non-disabled were not subjected to Hendon's

maltreatment. This abusive and illegal treatment was reserved solely for M.J., a child

with disabilities.

155.        Defendants have violated M.J.'s rights under Section 504 and the regulations

promulgated thereunder by denying M.J. the benefits of receiving full and equal access to

the public education programs and activities offered within the District.

156.     Defendants' practices were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the practices would result in a violation of M.J.'s federally protected rights.

157.     As a direct and proximate result of Defendants' violation of Section 504, M.J. has suffered, continues to suffer, and will suffer in the future injuries to his person including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

158.     **WHEREFORE**, Plaintiffs demand compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants in their official capacity only.

### FIFTH CAUSE OF ACTION
**Violation of The Americans With Disabilities Act ("ADA")**
**(42 U.S.C. §§12131 et seq.)**

159.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

160.     Title II of the ADA, 42 U.S.C. §12131 et seq. and the regulations thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. M.J. has learning and behavioral disabilities as alleged previously and is a protected person under the ADA.

161.     The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

24

162.     The discriminatory practices described herein excluded M.J. from participating in

and receiving the benefits of a public school education.

163.     Defendants' practices were intentionally discriminatory and exhibited a deliberate

indifference to the strong likelihood that the pursuit of these practices would result in a

violation of M.J.'s federally protected rights.

164.     Defendants violated M.J.'s rights under the ADA and the regulations promulgated

thereunder, denying M.J. the benefits of the services, programs, and activities to which he

was otherwise entitled. M.J. was mistreated in violation of law as a direct result of his

disabilities, and the manifestation of these disabilities.

165.     Students without disabilities were not subjected to the abuses M.J. was subjected

to, as described herein. This difference in treatment was due, in whole or part, to M.J.'s

status as a student with disabilities. Non-disabled were not subjected to Hendon's

maltreatment. This abusive and illegal treatment was reserved solely for M.J., a child

with disabilities.

166.     As a direct and proximate result of Defendants' violation of the ADA, M.J. has

suffered and continues to suffer injuries to his person, including, but not limited to, pain,

humiliation, anxiety, mental anguish, emotional distress and damage to his personal

relations in amounts to be ascertained according to proof at trial.

167.     **WHEREFORE**, Plaintiffs demand compensatory damages in the amount of

$1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses,

attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems

just and proper against Defendants in their official capacity only.

## SIXTH CAUSE OF ACTION
### (Violation of Title VI of the Civil Rights Act of 1964)

168.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

169.     Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United

States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." Defendants receive Federal

financial assistance and are subject to Title VI requirements.

170.     M.J. is African-American; therefore, he is in a protected class.

171.     M.J. has a protected right to be free from race-based discrimination and

harassment under Title VI of the Civil Rights Act of 1964.

172.     M.J. was subjected to intentional discrimination, harassment, and assault due to

his race.

173.     Most, if not all, the students affected by the "Hendon scared straight" program

were African-American.

174.     This race-based harassment/assault created a hostile educational environment.

175.     As a direct and proximate cause of the hostile educational environment that was

allowed to flourish due to Defendants' deliberate indifference, M.J. experienced such

severe, pervasive, and/or objectively offensive race-based harassment that he was

deprived of equal access to educational benefits or opportunities.

176.     As a result of Defendants' failure to comply with its duty under § 601 of Title VI

of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., and its implementing

regulations, M.J. has suffered damages including special and general damages according to proof.

177.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against the Board, the District, and the individual Defendants in their official capacity only.

**SEVENTH CAUSE OF ACTION**
**Failure to Report Child Abuse**
**(Ohio Rev. Code 2151.421)**

178.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

179.     Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

180.     M.J. was an abused child under R.C. § 2151.031.

181.     Defendants were aware that Hendon grabbed M.J. by the shirt and threw him against a brick wall, pushed him, and pinned him against the wall.

182.     Defendants were aware that Hendon used profanity in front of M.J. at Leggett CLC.

183.     Defendants were aware that Hendon put handcuffs on M.J. in addition to handcuffing other children while they were on school property.

184.     Defendants were aware that M.J. was an abused child under the statute.

185.     This child abuse was not reported by Defendants, as required under R.C. §

2151.421. As a result of these Defendants' failure to report child abuse, M.J. suffered

further injury, including mental anguish and severe emotional injury.

186.     Despite the plain language and meaning of R.C. § 2151.421, Defendants failed to

report the abuse to the public children services or local law enforcement.

187.     As a school authority and employee acting in her official and individual capacity,

Defendant Vincente knew or had reasonable cause to suspect that M.J. suffered physical

and mental injury that reasonably indicated abuse when Defendant gave Hendon

permission to take M.J. to a private room without any supervision from Leggett CLC

employees or teachers.  Plaintiffs further state that Defendant failed to immediately report

this abuse.

188.     As a school teacher and employee acting in her official and individual capacity,

Defendant Ramon had reasonable cause to suspect that M.J. suffered physical and mental

injury that reasonably indicated abuse when Defendant previously witnessed Hendon

handcuffing innocent children at Leggett CLC, and allowed Hendon to take M.J. out of

Defendant's classroom.  Plaintiffs further state that Defendant failed to immediately

report suspected abuse.

189.     Defendants knew that Hendon's physical and verbal abuse of M.J. constituted

child abuse against him under R.C. § 2151.031. However, Defendants did not report the

child abuse, as required by R.C. § 2151.421.

190.     Defendants are liable to Plaintiffs, because their conduct falls outside of the

protections afforded to them by the General Assembly, and their failure to report M.J.'s

abuse caused further injury to Plaintiffs.

191.    **WHEREFORE**, by failing to report suspected child abuse pursuant to Ohio

Revised Code § 2151.42, Plaintiffs request that this Court award Plaintiffs compensatory

damages in the amount of $1,000,000.00, punitive damages in the amount of

$500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental

anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or

equitable relief as this Honorable Court deems just and proper.

### EIGHTH CAUSE OF ACTION
**Negligence**

192.    Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

193.    Defendants were negligent in conducting a proprietary function pursuant to Ohio

Revised Code 2744.02 (B)(2) and/or were negligent in conducting a governmental

function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

194.    Defendants have a duty of care to take reasonable care to ensure that their acts or

omissions do not cause reasonably foreseeable injury to their pupils.

195.    Defendants further have a duty to maintain custody and control of the Leggett

CLC building and supervise the student body.

196.    Defendants breached that duty by allowing Hendon to gain access to the building

and M.J.'s classroom, and permitting Hendon to interact with and assault M.J. in an

unsupervised area of the building.

197.    Plaintiffs suffered personal injury as a direct and proximate result of Defendants'

failure to exercise reasonable care in the performance of their duties.

198.    In the alternative, Defendants, by maintaining custody and control of the building

and student body, engaged in an activity that is outside of the scope of their

responsibilities and obligations, which suggests that the activity was outside of the scope of their employment, and thus proprietary in nature, rendering Defendants liable to Plaintiffs for the injuries that their conduct caused Plaintiffs.

199. In the alternative, to the extent it is determined that Defendants authorized and/or approved and/or permitted Hendon to gain access to the building and student body, Defendants' activities are not functions expressly delegated to them and are not activities performed in connection with either a governmental or proprietary function. Defendants, therefore, are liable for their willful and wanton conduct, because their conduct falls outside of the protections afforded to them by the General Assembly and because the conduct caused injuries to Plaintiffs.

200. Defendants' actions or omissions produced Plaintiffs' injuries. Plaintiffs would not have suffered their injuries, but for Defendants' behavior.

201. An ordinarily prudent person could have reasonably foreseen that Defendants' conduct would likely lead to Plaintiffs suffering some injury.

202. Defendants' actions demonstrate recklessness, malice, willful and wanton conduct.

203. As a proximate cause of Defendants' negligent conduct, Plaintiffs have suffered injuries including serious emotional distress.

204. **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper.

## NINTH CAUSE OF ACTION
### Negligence *Per Se* - Ohio Revised Code § 2919.22

205.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

206.     Ohio Revised Code § 2919.22 specifically mandates that no person having

custody or control of a child under 18 years of age shall create a substantial risk to the

health or safety of the child, by violating a duty of care, protection, or support. R.C. §

2919.22 further mandates that no person shall abuse such child; torture or cruelly abuse

such child; or administer corporal punishment or other physical disciplinary measure, or

physically restrain such child in a cruel manner or for a prolonged period, which

punishment, discipline, or restraint is excessive under the circumstances and creates a

substantial risk of serious physical harm to the child.

207.     Defendants, by virtue of their relationship with M.J., had custody and control of

M.J. during school hours.

208.     Defendants' actions taken against M.J. were in direct violation of R.C. § 2919.22.

209.     M.J. experienced physical pain, trauma and significant emotional distress as a

result of allowing Hendon to come in contact with M.J.

210.     Defendants had a duty to protect M.J. from assault as prohibited by Ohio law.

211.     Said actions are a violation of Ohio Revised Code § 2903.13 (assault) for which

there is civil liability pursuant to Ohio Revised Code §2307.60.

212.     Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes

negligence *per se*.

213.     As a direct consequence of these actions, M.J. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is entitled to compensatory damages and attorney's fees.

214.     **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper.

## TENTH CAUSE OF ACTION
### Negligence *Per Se* - Ohio Revised Code § 2151.421

215.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

216.     Ohio Revised Code § 2151.421 specifically mandates that Defendants were to report Hendon's conduct to the appropriate authorities.

217.     Defendants intentionally and recklessly failed to timely report Hendon's conduct to the appropriate authorities.

218.     R.C. 2151.421 imposed that specific and mandatory reporting duty on the Defendants for the safety and protection of M.J.

219.     Defendants intentionally and recklessly failed to comply with the mandates of R.C. 2151.421.

220.     As a direct and proximate cause of the Defendants' intentional and reckless violation of R.C. 2151.421, the Plaintiff children have suffered the type of injuries the statute was designed to protect against.

221.     The Defendants' violation of R.C. 2151.421 is a misdemeanor of the first degree.

222.     The Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

223.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## ELEVENTH CAUSE OF ACTION
### Negligent Training/Supervision under Ohio Law

224.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

225.     The Supervisory Defendants (District, James and Vincente) each have duties to train and supervise teachers and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision.

226.     Each of the Supervisory Defendants failed to discharge these duties.

227.     The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

228.     As a result, M.J. was harmed when Defendants allowed Hendon to verbally and physically assault M.J.

229.     The assault has caused M.J. significant trauma.

230.     Had the Supervisory Defendants made any effort to properly train and supervise Vincente and Ramon, M.J. would not likely have suffered this egregious and conscience-shocking abuse by Hendon, nor would M.J. have likely sustained the damages that he has sustained and will sustain in the future.

231.     The Supervisory Defendants' failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of M.J.'s constitutional rights as described herein.

232.     The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

233.     The acts and/or omissions of the Supervisory Defendants caused M.J.'s damages in that he suffered extreme physical and mental pain and the lasting damage that he will endure in the future.

234.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against the District, the Board, Allison, and Grubbs.

## TWELFTH CAUSE OF ACTION
### Premises Liability

235.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

236.     Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

237.     Plaintiffs state that Defendants have custody and control over Leggett CLC school property.

238.     Plaintiffs state that M.J., as a student attending Leggett CLC, was an invitee included in the class of people Defendants expect to be on Leggett CLC school property.

239.      Plaintiffs state that Defendants owed M.J. a duty to exercise ordinary and reasonable care to keep the premises safe, and to protect M.J. from an unreasonable risk of physical harm.

240.      Plaintiffs state that each of the Defendants breached the duty of care owed to M.J. by not protecting him from an unreasonable risk of physical harm when Defendants authorized and/or approved and/or permitted Hendon to gain access to the building, and allow Hendon to interact with M.J. in an unsupervised location.

241.      Plaintiffs further state that Defendants' breach of the duty owed to M.J. proximately caused M.J.'s injuries.

242.      Accordingly, Defendants are liable to Plaintiffs, because by failing to keep the premises safe, their conduct falls outside of the protections afforded to them by the General Assembly, and such conduct caused injuries to Plaintiffs.

243.      **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### Invasion of Privacy

244.      Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

245.      Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

246.     Plaintiffs state that Defendants intentionally and unreasonably intruded upon Plaintiffs' private affairs and concerns when Defendants gave Hendon, a third person who is not employed by Leggett CLC, M.J.'s progress report.

247.     These progress reports are maintained by the Akron City School District and Leggett CLC, and include personally identifiable information on M.J. such as his grades and profile.  Such records are further protected by the Family Educational Rights and Privacy Act of 1974, which prohibits the disclosure of minor students' educational records unless a parent or guardian consents to the disclosure.

248.     Plaintiffs state that the nonconsensual disclosure of M.J.'s progress report would be highly offensive to a reasonable person, because the private information was given to Hendon who is not a parent, guardian, or employee, and who does not need a minor child's personal profile and grades.  Due to Defendants unreasonable intrusion into Plaintiffs' affairs, Hendon was able to use the progress report to better identify and injure M.J..  Defendants are liable to Plaintiffs, because their conduct falls outside of the protections afforded to them by the General Assembly.

249.     **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
### Assault

250.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

251.     Hendon acted with the intent to create a state of fear or danger of harm or offensive contact with M.J.

252.     M.J. had a reasonable belief that he would be subject to harm or offensive contact by Hendon.

253.     M.J. experienced fear of such harm or offensive contact in response to Hendon's conduct.

254.     Hendon's conduct towards M.J. was harmful and offensive.

255.     As a direct and proximate cause of the foregoing actions by Hendon towards M.J., he has suffered damages.

256.     Defendants are vicariously liable for the assault.

257.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## FIFTEENTH CAUSE OF ACTION
### Battery

258.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

259.     Upon information and belief, in his actions towards M.J., Hendon engaged in the intentional touching of or application of force to his body and did so in a harmful or offensive manner, and without consent.

260.     As a direct and proximate cause of the foregoing actions of Hendon towards M.J., he has suffered damages.

261.     Defendants are vicariously liable for battery.

262.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## SIXTEENTH CAUSE OF ACTION
### Loss of Consortium

263.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

264.     As a direct and proximate result of the conduct of Defendants, S.J., as the parent and guardian of M.J. has been damaged due to the deprivation of the services, society, companionship, comfort, love, solace and affection of M.J. and is entitled to recover for her loss of consortium in an amount to be determined at trial.

265.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

 /s/   Edward L. Gilbert
Edward L. Gilbert (0014544)
One Cascade Plaza, Suite 825
Akron, OH 44308
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com